UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JOSHUA HOWARD,

          Plaintiff,

v.                             Case No. 21-cv-643-pp

TONI DEBRUIN and WENDY MONFILS,

          Defendants.

**ORDER SCREENING SECOND AMENDED COMPLAINT (DKT. NO. 12) AND DISMISSING CASE FOR FAILURE TO STATE A CLAIM**

Plaintiff Joshua Howard, who is incarcerated at Fox Lake Correctional Institution and representing himself, filed this case under 42 U.S.C. §1983. The court screened the complaint under 28 U.S.C. §1915A and determined that the plaintiff had not stated a claim because he did not allege the personal involvement of any defendant. Dkt. No. 4 at 16. The court gave the plaintiff an opportunity to file an amended complaint describing the defendants' personal involvement. Id. at 17. The plaintiff filed that amended complaint. Dkt. No. 7. The court screened the amended complaint and determined that it did not state a claim but gave the plaintiff an opportunity to file a second amended complaint. Dkt. No. 9. The plaintiff has filed a second amended complaint. Dkt. No. 12. This order screens the second amended complaint.

**I.    Screening the Second Amended Complaint**

    **A.**    <u>Federal Screening Standard</u>

Under the Prison Litigation Reform Act, the court must screen complaints brought by incarcerated persons seeking relief from a governmental

1

entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cnty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. County of Milwaukee, 570 F.3d

2

824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.  Plaintiff's Allegations

The plaintiff has sued Toni DeBruin and Wendy Monfils in their individual capacities. Dkt. No. 12 at 1. The plaintiff describes his claim as follows:

> This action alleges that the Division of Adult Institutions (DAI) Business Director and GBCI [Green Bay Correctional Institution] business office staff engaged in retaliation by ignoring court orders and taking advantage of their role as trustee of the plaintiff's accounts to repeatedly and unlawfully seize payments from the plaintiff's incoming funds and in breach of their fiduciary duty. Specifically, due to an amended policy, in 2016 the Defendants ignored the court's 2004 order limiting restitution collection to 25% of the plaintiff's state pay and began collecting it at 50% of all incoming funds. The plaintiff sought certiorari review and the court found that their actions were unlawful and in retaliation, the Defendants re-instituted the 50% collection rate using a pretext that they knew was invalid in order to prevent the plaintiff from receiving any benefit from the favorable court decision.

Dkt. No. 12 at ¶1.

The plaintiff alleges that in 2016, the Wisconsin Department of Corrections (DOC) implemented a new policy, DAI 309.45.02, under which they modified the rates at which they collect court obligations from 25% to 50% of incoming funds. Id. at ¶2. The plaintiff alleges that when he was sentenced in 2004, the court ordered that his restitution obligation "was to be paid from up to 25% of prison wages." Id. at ¶3. From 2002 until 2016, the DOC allegedly

3

complied with that order and collected restitution from the plaintiff's prison wages at a rate of 25%. Id. at ¶4.

The plaintiff states that in 2016, the legislature passed Act 355, which amended the state restitution statute to confer on the DOC the authority to set a reasonable rate of collection of restitution. Id. at ¶5. Act 355, codified as Wis. Stat. §973.20(11)(c), states:

> If a defendant who is in a state prison or who is sentenced to state prison is ordered to pay restitution, the court shall require the defendant to authorize the department to collect, from the defendant's wages and from other moneys held in the defendant's prisoners account, an amount or percentage the department determines is reasonable for payment to victims.

Id. at ¶5. The new statute went into effect on July 1, 2016. Id. at ¶6. The plaintiff states that all judgments of conviction printed after July 2016 "contained the above preprinted language from 973.20(11)(c)." Id. at ¶7. He alleges that because "it" read as a "court order," "it" caused confusion when an amended or corrected judgment of conviction was issued for a conviction that predated Act 355 due to the DOC's chosen interpretation. Id.

The plaintiff alleges that in his criminal case, Case No. 04CF2137, he received amended judgments of conviction in 2016 and 2017 that contained the above-quoted language. Id. at ¶8. He states that he was concerned that the DOC would try to take advantage of the preprinted language and use it as a basis for ignoring the court's order concerning the collection rate, so he filed a motion in the sentencing court asking that the language be removed from his judgment of conviction. Id. On February 3, 2017, the court allegedly denied his request but "reiterated that to the extent that any language conflicted with the

4

verbal order given by the court, it had no legal effect." Id. at ¶9. The plaintiff states that he sent copies of this decision to the defendants. Id.

The plaintiff alleges that

> [w]hen an inmate named Justin White found himself in a similar situation and the DOC attempted to collect restitution from a 2014 conviction at 25% based on the judge's order and then collect another 50% based on the preprinted language on his amended JOC, the court of appeals held that language related to Act 355 which was added by the clerk of court did not reflect an order given by a judge and ordered that the language be stricken from his JOC. *See State v. White*, 385 Wis.2d 514, 2019 WI App 5, ¶¶5-9.
>
> Upon information and belief, the Defendants were aware of the December 26, 2018 decision in *White*, and accordingly, were further put on notice as of that date that the preprinted language relating to §973.20(11)(c) placed on JOC's by the clerk were to be considered surplusage which held no lawful authority where it was not support by the court's previous verbal order.

Id. at ¶¶10-11.

The plaintiff alleges that the DOC, under the direction of defendant Monfils, implemented a state-wide policy of applying Act 355 retroactively and collecting all restitution obligations at a rate of 50%. Id. at ¶12. The plaintiff states that he filed a complaint challenging the DOC's ability to retroactively apply Act 355 to him, in direct conflict with the order of the sentencing court. Id. at ¶13. He alleges that his complaint was dismissed, and the DOC found that his obligations were being collected in accordance with §309.45.02. Id.

The plaintiff allegedly filed a *certiorari* appeal. Id. at ¶14. He states that on February 1, 2018, the Dane County Circuit Court issued a decision reversing the DOC, stating:

> Here, the DOC received an order requiring it to collect from Petitioner funds for surcharges and restitution at a rate of 'up to

5

> 25%.' The DOC, aware of the court order, instead collected at a rate
> of 50%. This amounts to a failure to follow the law.

Id. The plaintiff alleges that the "DOC did not appeal this decision and it was publicized in online reports and resulted in a flood of requests to DOC business offices and complaints throughout the DOC by similarly situated inmates, citing the plaintiff's decision as grounds to treat them accordingly." Id. at ¶15. The plaintiff states that in February 2018, Green Bay's business office reverted to the DOC's previous practice of deducting 25% of only the plaintiff's state pay and applying it toward his restitution obligation. Id. at ¶16.

The plaintiff alleges that whether or not the DOC complied with the sentencing court's order made a significant difference in his standard of living. Id. at ¶17. He says that when the DOC complies with the court's order, he receives 100% of any outside deposits with the ability to access 90% for his living expenses. Id. The plaintiff states that when the DOC disregards the order, he receives 50% with the ability to access 40%. Id. He alleges that in the latter situation, it no longer makes economic sense to have funds deposited into his account and he is forced to go without food and basic needs. Id.

The plaintiff alleges, "Upon information and belief, in direct response to the plaintiff's successful *certiorari* decision, Defendants DeBruin and Monfils conspired to come up with a way to make sure that the plaintiff remained constructively destitute and agreed to revert back to collecting 50% based upon a fictitious amended complaint to retaliate against him for successfully challenging the DOC." Id. at ¶18. He states that in March 2018, deductions at the rate of 50% showed up in his account statements, so he filed another

6

complaint stating that the defendants were not complying with the orders of the court. Id. at ¶19. The plaintiff alleges that the defendants reported to the institution complaint examiner that after the *certiorari* court's February 1, 2018 decision they received an amended judgment of conviction which negated the ruling. Id. at ¶20. He states that they told him "they were collecting 25% up until 2.16.18 and that the DOC received an amended JOC on 2.17.18 which allowed them to deduct 50%." Id. The plaintiff alleges that his complaint was dismissed. Id.

The plaintiff alleges that he did not know that an amended judgment of conviction had been issued and when he requested from records a copy of the new judgment of conviction, they replied that the most recent one was issued in 2017. Id. at ¶21. The plaintiff alleges that in response to subsequent filings in the *certiorari* court, the defendants abandoned the explanation given to the institution complaint examiner "about receiving a 2.17.18 JOC and took the position that they were relying on the preprinted language from the 2017 JOC as authority to resume the 50% collection rate on February 17th of 2018." Id. at ¶22. The plaintiff states, "Upon information and belief, the Defendants were fully aware that the preprinted language on the plaintiff's JOC did not provide a legal basis to disregard the sentencing court's verbal order and by extension, the *certiorari* court's order, and only used it as a pretext to allow them to continue to inflict harm on the plaintiff." Id. at ¶23.

The plaintiff alleges that based on the defendants' retaliatory acts since 2018, there have been over 150 improper deductions of restitution collected

7

from his trust account and he has been unable to purchase any items from the canteen. Id. at ¶24.

The plaintiff claims that the defendants violated his First Amendment rights when they conspired with each other to implement the February 2018 policy of collecting restitution at the rate of 50% and lying to the institution complaint examiner about receiving an amended JOC in order to negate the plaintiff's successful *certiorari* decision. Id. at ¶25.

The plaintiff claims that the defendants were able to carry out their plan of fiscal retaliation because they were acting as trustees of the plaintiff's trust accounts while he was in DOC custody. Id. at ¶26. He states that due to this fiduciary relationship, "the Defendants had a duty and obligation to act in the plaintiff's benefit, to exercise ordinary care, to be vigilant in guarding his assets, to disclose relevant information, to be loyal, and to employ diligence, prudence and absolute fidelity in managing his trust accounts." Id. at ¶27. The plaintiff claims that the defendants breached their state and common law duties when they acted contrary to the plaintiff's interests and the law and intentionally employed various stratagems and pretexts to cover up their dishonest conduct." Id. at ¶28. He states that defendants were "fully aware that they had no legal basis or authority to divert any of the plaintiff's outside funds or more than 25% of his state pay towards his restitution obligation and after receiving the certiorari court's order confirming this, they made over (150) improper and illegal diversions of hundreds of dollars from his trust account by collecting restitution from all sources at the inflate rate of 50%." Id. at ¶29.

8

The plaintiff seeks injunctive and declaratory relief, as well as nominal, compensatory and punitive damages. Id. at 8.

C. Analysis

To plead a retaliation claim, the plaintiff must allege that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the defendants' decision to take the retaliatory action." Perez v. Fenoglio, 792 F.3d 768, 783 (7th Cir. 2015) (quoting Bridges v. Gilbert, 557 F.3d 541, 546 (7th Cir. 2009)).

The plaintiff claims that the defendants violated his First Amendment rights when they implemented the February 2018 policy of collecting restitution at the rate of 50% and lying to the institution complaint examiner about receiving an amended judgment of conviction to negate the plaintiff's successful *certiorari* decision. When the court screened the plaintiff's amended complaint, it did not allow the plaintiff to proceed on a retaliation claim based on these allegations because the plaintiff had not alleged that his filing of his *certiorari* petition was a motivating factor in the defendants' actions to collect his court charges at 50%. Dkt. No. 9 at 18. The court stated:

> The defendants were already collecting restitution at 50% when the plaintiff filed his *certiorari* petition, they decreased to 25% for one month and then, based on their interpretation of the amended judgment of conviction, they reverted to 50%. (The plaintiff states the defendants implemented a policy of collecting funds in this manner, so presumably they did this with other incarcerated individuals, not just the plaintiff.) The plaintiff has not explained why he believes the defendants' decision to collect at the higher rate was because of his protected activity. Thus, he does not state a retaliation claim. See Bridges v. Gilbert, 557 F.3d 541, 546 (7th Cir.

9

> 2009); Dorsey v. Williams, No. 21-1858, 2022 WL 337192, at *1 (7th Cir. Feb. 4, 2022) (dismissal of retaliation claim at screening stage appropriate where plaintiff failed to allege connection between speech and adverse conduct).

Dkt. No. 9 at 18.

The court's prior order also explained that the plaintiff's allegation that the defendants relied on a "fictitious" judgment of conviction did not withstand scrutiny. Id. at 17 n.2. The court stated:

> The court notes that the plaintiff's allegation that the defendants relied on a "fictitious" judgment of conviction does not withstand scrutiny. On the same date the plaintiff filed his amended complaint, he filed a motion for preliminary injunction and exhibits. Dkt. Nos. 8, 8-1. In his motion, the plaintiff acknowledges that when defendants reverted to collecting 50% starting in March 2018, "the defendants were relying on preprinted language that was added to an amended JOC issued in 2017 which tracked with a recent change in law, which the sentencing court had already deemed 'surplusage.'" Dkt. No. 8 at 2. The amended judgment of conviction from State of Wisconsin v. Joshua Howard, Milwaukee County Case No. 2004CF2137, is dated February 7, 2017, and contains language that authorizes the DOC to collect, from the plaintiff's wages and from other monies held in the plaintiff's account, "an amount or percentage which the department determines is reasonable for restitution to victims." Dkt. No. 8-1 at 16. The defendants allegedly used this preprinted language from the plaintiff's February 2017 amended judgment of conviction (which is based on Wis. Stat. §973.20(11)(c) ("Act 355")) to collect up to 50% of the plaintiff's funds. As the plaintiff acknowledges in his motion for preliminary injunction, while the defendants reduced the plaintiff's withdrawals to 25% after the *certiorari* order, they increased the withdrawals back to 50% based on language in the amended judgment of conviction that arguably supports their actions (although the plaintiff contends that they unlawfully relied on the language in his judgment of conviction).

Dkt. No. 9 at 17-18 n.2.

In the second amended complaint, the plaintiff reiterates that the defendants relied on a fictitious judgment of conviction to revert to withholding

10

50% of his incoming funds. Again, the plaintiff's allegation does not withstand scrutiny. The plaintiff alleges that the defendants *received* an amended judgment of conviction on February 17, 2018, not that the judgment of conviction was *dated* February 17, 2018. The plaintiff has alleged that amended judgments of conviction were filed in his criminal case in 2016 and 2017. The plaintiff's allegations do not allow an inference that the defendants relied on a *fictitious* amended judgment of conviction to withhold 50% of the funds in March 2018. The plaintiff also has alleged that the language from Act 355 was printed on amended judgments of conviction that were issued after the July 2016 enactment of statute. The only reasonable inferences that the court can draw are that the plaintiff's 2016 and 2017 amended judgments of conviction contained this language and that the defendants relied on the language to withhold 50% of the plaintiff's incoming funds.

The plaintiff alleges that the defendants used the amended judgment of conviction as a pretext and that they knew they were unlawfully withholding the plaintiff's funds at the higher rate based on the decision in State v. White, 385 Wis. 2d 514, Appeal No. 2018AP154-CR, 2018 WL 6788076, at *2. In that case, the Wisconsin Court of Appeals determined that language from Wis. Stat. §973.20(11)(c) inserted into a defendant's amended judgment of conviction must be removed because it did not apply to the defendant given that he was sentenced prior to the enactment of Act 355. Id. The White case was decided in December 2018, months after the defendants allegedly began withholding 50% of the plaintiff's incoming funds.

11

Other incarcerated individuals have filed cases challenging the practice the plaintiff challenges here. See Ortiz v. Carr, 401 Wis. 2d 450, 461 (Wis. Ct. App. 2022); Harrell v. Carr, 982 N.W.2d 352 (Table), Appeal No. 20200AP1601, 2022 WL 1816388 (Wis. Ct. App. 2022); Swenson v. Winkleski, Appeal No. 2022AP1538, 2024 WL 123486 (Wis. Ct. App. 2024). These cases establish that Act 355, codified as Wis. Stat. §973.20(11)(c), probably does not apply to the plaintiff's sentence from his 2004 criminal conviction because the statute, enacted in July 2016, is prospective. For the reasons explained above, however, the plaintiff's allegations that the defendants have relied on the language from the statute that was included in his amended judgment of conviction does not support a retaliation claim. The plaintiff has not alleged that his First Amendment protected activity was a motivating factor in the defendants' actions.

The plaintiff has not stated a claim for violation of his constitutional rights. As the court previously advised the plaintiff, if he disagrees with the DOC's interpretation of his amended judgment of conviction, he may be able to enforce the *certiorari* order by filing a petition for a writ of mandamus in the circuit court. See State of Wisconsin *ex rel.* Joshua Howard v. Kevin Carr, Appeal No. 2018AP1780, 2021 WL 8534077 (Wis. Ct. App. 2021) (denying plaintiff's motion for contempt sanctions against DOC). Because the court has concluded that the complaint does not state a federal claim, the court will not exercise supplemental jurisdiction over any state law claims the plaintiff may

12

Case 2:21-cv-00643-PP   Filed 02/27/24   Page 12 of 14   Document 13

have stated in the second amended complaint. See 28 U.S.C. §1367(c)(3); Lavite v. Dunstan, 932 F.3d 1020, 1034-35 (7th Cir. 2019).

**II. Conclusion**

The court **ORDERS** that this case is **DISMISSED** under 28 U.S.C. §§1915(e)(2)(B) and 1915A(b)(1) because the complaint fails to state a claim. The court will enter judgment accordingly.

The court will document that the plaintiff has incurred a "strike" under 28 U.S.C. §1915(g).

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. See Federal Rules of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. See Fed. Rule of App. P. 4(a)(5)(A).). If the plaintiff appeals, he will be liable for the $605 appellate filing fee regardless of the outcome of the appeal. If the plaintiff seeks to proceed on appeal without prepaying the appellate filing fee, he must file a motion *in this court.* See Fed. R. App. P. 24(a)(1). The plaintiff may be assessed another "strike" by the Court of Appeals if it concludes that his appeal has no merit. If the plaintiff accumulates three strikes, he will not be able to file a case in federal court (except a petition for *habeas corpus* relief) without prepaying the full filing fee unless he demonstrates that he is in imminent danger of serious physical injury. Id.

13

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Rule 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. See Fed. R. Civ. P. 6(b)(2). Any motion under Rule 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. See Fed. R. Civ. P. 6(b)(2).

The court expects parties to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin this 27th day of February, 2024.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**

14

Case 2:21-cv-00643-PP   Filed 02/27/24   Page 14 of 14   Document 13